May it please the court, my name is William Costopoulos. I'm from Cumberland County. I represent the appellant, Benjamin D. Scherr, and I respectfully reserve two minutes for rebuttal. Benjamin D. Scherr, Your Honor, the appellant is 84 years old. He pled guilty in September of 2005 to fraud on the government. In essence, he was making payments to civilian witnesses. How much more time does he have to serve if he completed the sentence? His release date is early 2015. That's what I thought. So it's a little over a year. Yes, if he makes it that long. Correct. He was sentenced to 10 years for this fraud in those six. One month after the sentence, he voluntarily surrendered. He has served over 75% of his sentence. He has been a model inmate and has paid all fines and costs. And when I say he was a model inmate, the only qualifier to that is the burden that his medical condition has been on the system. Mr. Costopoulos, as I read the petition, I want to make sure I read it correctly because it seemed to me that part of it was in the nature of a challenge to the adequacy of his medical care. That's a big part. And that part of it went to the 3582 compassionate release request so that clearly the adequacy of medical care, well known, would sound in a 1983 action, would it not? If I was looking for money. Exactly. And you don't ask for money in a prayer for relief. Well, which leaves me wondering what those allegations really are material to. Those allegations, Judge, and it's the issue before this court, are that the inadequacy of the medical treatment of this old man violates the Eighth Amendment. And having done that. What you need to get there is willful indifference, right? Say that again, Your Honor. What test do you have to meet to show that? It's a high hurdle. It's a very high hurdle. It is. Under the Eighth Amendment. It absolutely is. And in order to meet that hurdle, we need a hearing. And at that hearing, if we don't walk the walk. But the Eighth Amendment is only going to be regressible in a 1983 action, isn't it? Not unless this court. Or a Bivens action, perhaps. But in any event, it's going to be grounds for 1983 relief. It is. Unless this court. So how does the Eighth Amendment implicate a habeas action? In this way. I'm asking this court, and I believe because you've entertained this oral argument, you're going to consider it. I'm asking this court to expand the rationale of the Woodall decision to include inadequate medical treatment in a prison system as a non-execution of the intended sentence. Now, Woodall was the failure to put somebody in a halfway house. Is that correct? Yes. And how does that apply here? Obviously, you're saying expand, but. If the failure to put an inmate at a halfway house flies in the face of a sentence to be executed, I respectfully submit that the failure to provide medical attention to an inmate of any age is the failure to execute the sentence imposed by the sentence. I'd like to pursue that, because the extension of Woodall that you ask seems to me to be in conflict with the rule that we established in Cardona, where we said that a 1941 challenge requires the petitioner to allege that the BOP's conduct was somehow inconsistent with a command or recommendation in the sentencing judgment. We don't have that at all here. No, you don't have a command that when a judge sentences an inmate that he be given proper medical attention. That's implicit in our constitution of how we treat our prisoners. You're not going to impose upon our trial judges at the federal level that they have to command that an inmate be given proper medical treatment. Well, but the fact of the matter is judges end up supervising the conduct of prisons from time to time. Some would say with regularity, I've done it as a district judge. That happens, but it doesn't happen pursuant to habeas. It happens pursuant to a 1983 act. Well, I'm asking this court to make it pursuant to a habeas, because again, the relief on the horizon here is not money. The relief on the horizon here is to set the standard for medical attention of inmates, no matter what the crime was. It certainly seems to me that there's some substantial equities on your client's side here. But what I'm left with is thinking that really what you're arguing for is lenity and a form of lenity which would ask us to ignore the language of 3582. No. Which says that the motion's got to come from the BOP. Can't be sui sponte. Can't come from you. Can't come from us. That would be correct, Judge, if this were a plea of this tribunal for compassion, for a compassionate release. If that was my plea, then the lower court would have been correct. But what besides compassionate release? In other words, 3582C1A is compassionate release. Now, what are you suggesting we should do? I'm suggesting that we focus on section 2241, which addresses the execution. Although we haven't put this type of claim into a 2241. The petition that was filed was pursuant to 2241. The petition that was filed alleged that the sentence was not being executed the way they are to be executed in this country. And that is the issue before this court. And, indeed, this court, by order of April the 8th, 2013, expressed a willingness to address. This starts off with a drug is prescribed that has significant side effects. And the person has a very significant reaction to that particular drug that does have side effects. They're taken to the hospital and they're doing what they can. That sounds like negligence. That does not sound like willful indifference. Moreover, this person has myriad other maladies or physical conditions that could be, especially when put together, life-threatening. So then you, okay, say, let's go under 3582 and ask for compassionate release. But, as Judge Smith has noted, that has to be a motion before we have jurisdiction. That has to be a motion of the Bureau of Prisons, doesn't it? It does. So, I mean, so are you conceding that you don't have a statutory basis or, alternatively, or along with that, that we lack jurisdiction, as the district court did, to grant compassionate relief? Yes. So you're conceding that alternative relief. You're hinging all of this on 2241. But I'm trying to figure out how inadequate medical care has anything to do with the execution of a sentence. The sentence goes on. The time continues to be served. This is a condition of confinement, perhaps. But I'm trying to figure out how it has anything to do with the sentence itself. And can you explain away Judge Smith's excellent opinion in Cardona, which seemed to, I mean, it's not, it doesn't appear to be a positive case for your side, where he kind of, where he helped to define what execution could mean. Let me put it this way, Judge Smith. And Mr. Kostopoulos and I go back a long time. We do. You know, many, many years. So he's understandably free to say, that was a damn lousy opinion of his, actually. It wasn't all that. No, I think it's reconcilable, Judge. And you were on the court of common pleas out there in Blair County for years. And if you've imposed a sentence on a defendant before you, that you are going to do two years in a state correctional institution for a crime of violence. And it was brought to your attention that after you sentenced him, that this defendant was suffering from cancer. And they were just going to let him die. I can tell you, you never contemplated that course of treatment at the prison. Never. I don't care what his crime was. And therefore, it's reconcilable. Because the issue here is whether the alleged failure to provide medical treatment complies with the sentence executed, to be executed, imposed by the judge. That's the sole issue. Forget compassion. That's the sole issue for this court. And if talking about a halfway house gives rise to a 2241 action, I respectfully submit that this issue does. And the facts of this case scream for this court to extend Woodall to the spirit and the intent of what the sentencing judge intended. And to adopt the reasoning of the Second Circuit in Alini that pretty much said we're going to do that. That's my case. And I rest on that assertion. Thank you very much. Thank you. We'll get you back in the battle. Ms. Mershmer. If it pleases the Court, my name is Kate Mershmer, Assistant U.S. Attorney on behalf of the appellee, Warden Krueger. Mr. Kostopoulos is conceding that the court lacks jurisdiction to review the denial of the Bureau of Prisons' refusal to seek a compassionate release. He's relying on, you know, the Second Circuit case law. And, you know, could we extend Woodall, which permitted, as I've mentioned, an inmate's desire to serve his sentence in a halfway house to be considered under 2241? They're saying that, in effect, that was a condition of confinement claim. Why might we not consider this to be a condition of confinement claim? Because the circuit has already shut that door in the Lehmer, the McGee, and the Cardona case. Although the Second Circuit has recognized that, this Court has not. The execution claim that can be brought in a 2241 falls into something that is an inconsistent statement or command of the sentencing court. It's just not the overall conditions. Well, now, your adversary points out, isn't implicit in every order of executing the sentence that a person's going to be given adequate medical care? That's implicit. I mean, does it have to – do we have to list all the things that are – I mean, some of the things are implicit, like adequate medical care, right? Yeah, I believe it's implicit under the Constitution that adequate medical care is going to be provided to an inmate. A sentencing judge is saying, this is how many years you're going to serve. And if there's something more specific, the sentencing court identifies what it is, such as McGee. It was, you're only going to have to pay $20 a month for your fee. It was never extended to anything that has been these general conditions. In the Lehmer case, this Court held that an inmate who was placed in the restricted activities program, that that was conditions of confinement claims that could not be brought under habeas at all. In Cardona, it was a placement in the special management unit, which is a very restrictive and somewhat harsh confinement. And this Court again held it was a garden variety conditions claim that cannot be brought by habeas, and that there was no habeas claim under any recognized theory. Woodall simply dealt with the community CCC, or halfway house placement. And again, the sentencing court had recommended that the last six months be in a halfway house. Now the Court had asked us to address Woodall, and as we said in our brief, the Woodall case does not hold that conditions of confinement cases can be raised under habeas, but it did cite to some Second and Ninth Circuit cases that use somewhat expansive language to indicate that it might, all those be conditions of confinement cases, all which are dicta. And then as this Court did in Ganim, although it's an unpublished decision, it went through those cases cited in Woodall and noted that they all really dealt with the length of sentence, whether 2255 was ineffective for 2241 or parole issues. As I cited also in another unpublished Third Circuit decision case, Bonadonna, where an inmate had challenged the denial of soft shoes because it provided allegedly deficient medical care, that that was a conditions claim and did not fall within habeas. What is the process you go about for considering whether to make a motion under 3582? I'm sorry, Your Honor? What is the process you would go about in making determinations to make whether you wish or wish not to make a motion under 3582? An inmate may ask the warden for such relief. The warden will consider it. There are regulations that address that. There is a new program statement, not applicable in this case, but that sets guidance on factors to be considered. And then it goes, if it's based on medical conditions, the warden will ask the medical director to consider it. Do you? I'm sorry, go ahead. Then it goes directly to general counsel and the director in Washington. They used to go to the regional director, but they took that step out to make the process go faster. Things are considered on an expedited basis, particularly medical. I would hope so for 84-year-olds. Do you know what steps were taken administratively in this case? It's unclear from the record, but Mr. Scher did file a request with the warden. I believe it went to the regional director under standards at that time, and then it went to the director of the Bureau of P in Washington. I do not know if there was a formal denial. I assume that there was,  indicating that there's no basis for compassionate release. I know, although not a matter of this record, that Mr. Scher has submitted a second request under the new program statement. It's just hard for me to imagine in a time of enormous fiscal challenge. With the attorney general saying that we have too many people in prison. Yeah, and a federal prison population. I have watched Virgin during the 25 years I've been a federal judge, that if indeed the conditions that this prisoner suffers from can be objectively determined at 84 years old, there wouldn't be serious consideration being given to compassionate release for him. Your Honor, I know they give serious consideration to every request. I can't imagine wardens frankly want prisoners like this. It's difficult to be a warden. It's expensive to have prisoners with medical conditions. And that's why Congress gave the director of the Bureau of Prisons such broad discretion. No standards to consider other than extraordinary and compelling circumstances. How many motions are normally made, do you know, in the course of a year generally for compassionate release? I do not know, Your Honor. I believe there might have been some reference to that in the Office of Inspector General report. And I believe they looked at it over a five-year period from 2006 to 2011, but I do not know specifically. I know people have criticized that there's many more requests that are granted, but the Bureau of Prisons is looking at the circumstances as to each person and then also the effect on the community if released. I want the court to realize that we do not agree that Mr. Scher is in near terminal stage, but there's just nothing on the record to support it one way or the other, but it is our understanding that he is not. What we're mainly concerned about is that conditions. That's why I conditioned my comment earlier on, you know, assuming that these conditions could be objectively verified. The essential thing is that they're trying to raise what should be a civil rights action under habeas, and when you do that, you're avoiding all the requirements of the PLRA, three strikes rule. We've talked about that with Mr. Christopoulos, whether this should be a 1983 action. Right. I mean, I would imagine the concern there is it's a matter of time. By the time you get to the end game of the 1983 action, this person may not be alive. And also it'll be 2015 and he would be out anyway. Yes, Your Honor. If he is still alive. Yes, and although there might be an occasional case that has some particular concerns to a court, or as to me, the bottom line is can we use habeas to raise for somebody to assert an Eighth Amendment claim of medical deliberate indifference and then say, I don't want better medical care. I just want to be released at home. We've got it. I mean, the point, Mr. Christopoulos, he's made the correct argument. You'd have to extend Woodall, and I think you've given the response as to why you believe it should not be done. If the court has no further. Actually, I do. You mentioned in passing, Mr. Scherr has another request for a compassionate release? Yes, it's not a matter of record. Now, you had said there's some new procedures. I mean, any idea when that will be decided upon? It's being considered now. Well, I mean, when will he find out whether it's granted or not? I cannot guarantee you, but I know it's being considered on an expedited basis. It's before the warden. This request was submitted in June. They're processing it now. I expect something imminent, at least from the warden's perspective. You'll advise the court if it's granted, of course, right? Absolutely, Your Honor. Okay. Thank you very much. Thank you. Mr. Kasopoulos. Your Honor, the opposing counsel has not raised any new matter, so I'm not going to respond to any of her oral argument. I will try to answer the one question. When was this motion or the second motion for inquiry with regard to compassionate release? When was that submitted? June 17th of this year it was submitted. And in August of this year, Eric Holder's recommendations for a beefed-up compassionate release and expedited compassionate release review was adopted. You haven't heard yet, though. We haven't heard anything yet, and I don't want to wait. Washington's busy on other things these days. Exactly. And, by the way, Your Honor, under the old compassionate release program, I think like 14 a month, I get it, and it's unclear how many apply in response to your question, Judge, and I'm quoting from an LA Times article that appeared last week. It's unclear how many apply because the Bureau's Washington headquarters keep a tally only of those requests that have been approved by wardens at the local level and passed up. So the application number is not transparent. Thank you, Your Honor. Very good. Thank you. Thank you to both counsel for well-presented arguments.